**E-FILED**
Wednesday, 24 October, 2007  03:17:23 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-CV-2203 |
| CITY OF CHARLESTON, ILLINOIS, ILLINOIS COUNTIES RISK MANAGEMENT TRUST, and JOHN PHILPOTT, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| ILLINOIS COUNTIES RISK MANAGEMENT TRUST, | ) ) ) | |
| Counterplaintiff, | ) ) | |
| v. | ) ) | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, CITY OF CHARLESTON, ILLINOIS, and JOHN PHILPOTT, | ) ) ) ) ) | |
| Counterdefendants, | ) | |

## OPINION

This case is before the court for ruling on the Motion for Partial Summary Judgment (#36) filed by Plaintiff, Selective Insurance Company of South Carolina (Selective) and the Motion for Partial Summary Judgment (#38) filed by Defendant/Counterplaintiff Illinois Counties Risk Management Trust (ICRMT). Following this court's careful consideration of the arguments of the parties and the documents provided by the parties, Selective's Motion for Partial Summary Judgment (#36) is GRANTED in part and DENIED in part and ICRMT's Motion for Partial Summary Judgment (#38) is GRANTED.

FACTS[1]

On April 6, 2004, John Philpott was seriously injured when he was struck by a backhoe.  At the time of the incident, Philpott was engaged in construction on property owned by the City of Charleston (City).  A fire training facility was being built on the property.  Philpott testified at his deposition that, at the time he was injured, he was "doing work at that construction facility." Philpott was employed as a firefighter with the City at the time of the accident and received workers' compensation benefits following his injury.

On March 9, 2005, Philpott filed a Complaint against the City in the circuit court of Coles County.  In Count I, Philpott sought damages for the City's failure to respond to a Freedom of Information Act request.  In Count II, Philpott alleged that, on April 6, 2004,  the City "had a non-delegable duty to provide a safe work environment" and breached that duty in various ways, resulting in his injuries.  Philpott sought damages for construction negligence by the City.  In Count III, Philpott alleged that the City invited him onto its premises and "had a duty to exercise ordinary care in the doing of any activities on said premises for the safety of others invited to be there." Philpott alleged that the City breached this duty in various ways, resulting in his injuries.  Philpott sought damages from the City for negligence.

After Philpott filed his Complaint against the City seeking damages for negligence, the City's workers' compensation carrier, ICRMT, stopped paying workers' compensation benefits. On July 6, 2005, Selective notified the City by letter that it would provide a defense to the City regarding the Philpott lawsuit.  However, Selective made clear that the defense was being provided

_____

[1]  The facts recited are taken from the parties' statements of undisputed facts and the documents submitted by the parties.  This court has only included facts which are supported in the record.

under a reservation of rights.  Selective stated that the exclusions in the policy issued to the City excluded coverage for Philpott's claims against the City and also stated that Selective would not provide indemnification for any judgment entered against the City in this matter.

The City filed a Motion to Dismiss Counts II and III of Philpott's lawsuit, arguing that Philpott was within the scope and course of his employment with the City at the time of the occurrence so that the exclusive remedy provision of the Illinois Workers' Compensation Act barred his negligence claims against the City.  In response to this Motion, Philpott argued that, although the injury occurred on the employer's premises, it occurred at a time after Philpott's work.  Philpott argued that he had completed his shift and clocked out prior to the time of the injury and that the "evidence shows that firefighters who work at the training center did so as volunteers and didn't expect to be paid."  Philpott contended that "there is a question of fact presented as to whether or not the risk of getting hit by a backhoe while unloading railroad rails is a risk incident to one's employment as a firefighter."

On May 26, 2006, Judge Dale A. Cini entered an Opinion and Order in the Coles County case.  Judge Cini concluded that there were genuine issues of material fact "in connection with the assertion that [Philpott's] injuries arose out of and in the course of his employment."  Judge Cini therefore concluded that an evidentiary hearing was required on this issue.

Philpott later filed an Amended Complaint in the circuit court of Coles County.  In his Amended Complaint, Philpott again alleged, in Count I, that the City failed to provide information requested under the Freedom of Information Act.[2]  In Count II, Philpott again alleged that he "was engaged in the construction" at a site where the City was building a fire training facility and that the

---

[2]  This count is not pertinent to the issues before this court.

City "had a non-delegable duty to provide a safe work environment." In Count II of the Amended Complaint, Philpott alleged that "prior to April 6, 2004, [he] had been employed as a firefighter by the City of Charleston." However, he alleged that he "was off duty and was not within the scope or course of his employment." He also alleged that the City "maintained control of the construction project including the right to direct the operational details of the persons who were upon the scene and performing construction." Philpott alleged that the City committed negligent acts and omissions and was liable for construction negligence. In Count III, Philpott again alleged that the City was liable for negligence. He again alleged that the City invited him onto its premises and "had a duty to exercise ordinary care in the doing of any activities on said premises for the safety of others invited to be there." As he had in Count II, Philpott alleged in his Amended Count III that he had been employed as a firefighter by the City but was "off duty and was not within the scope or course of his employment." Philpott alleged that the City committed one or more of the following negligent acts or omissions:

> negligently and carelessly performed construction activities in that they operated heavy equipment in the vicinity of the persons on the premises, operated said heavy equipment with untrained operators, failed to provide sufficient spotters for the persons who were on the premises, failed to require the spotters to keep their attention trained on the people working in the vicinity of the backhoe, failed to keep a sufficient lookout in the area underneath the bucket of the backhoe, and by and through an agent caused the backhoe to come down on the plaintiff, and were otherwise negligent in their conducting the

4

activities of constructing a fire training facility within the premises.

PROCEDURAL HISTORY

On October 20, 2006, Selective filed its Complaint (#1) in this court against the City of Charleston, ICRMT and Philpott.[3]  Selective sought a declaration from this court that it does not have a duty to defend or indemnify the City in the underlying Philpott lawsuit.  Selective attached a copy of the commercial general liability policy it issued to the City.  This policy includes an exclusion which states:

> [This insurance does not apply to] "Bodily injury" to: (1) An "employee" of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . .

Selective also attached a copy of a commercial umbrella liability policy it issued to the City.  This policy contains an Employer's Liability Exclusion which states that the insurance does not apply to "Bodily injury" to an "Employee" of the insured "arising out of and in the course of employment by the insured."

Selective alleged that it owed no duty to defend or indemnify the City for the underlying Philpott action because, based upon the underlying complaint, the City's liability "was predicated upon actions performed by Philpott while he was working within the course and scope of his employment for the City and while Philpott was performing duties related to the City's business, a risk excluded by Selective's policy."

---

[3]  This court's jurisdiction is based upon diversity of citizenship.  The Complaint alleged that Selective is a South Carolina corporation with its principal place of business in Columbia, South Carolina, and that Defendants ICRMT, the City and Philpott are citizens of Illinois.  The Complaint further alleged that the amount in controversy exceeds $75,000.00.

Selective also alleged that ICRMT issued a Workers' Compensation policy to the City and was obligated under this policy to provide insurance coverage to the City for bodily injury sustained by City employees.  Selective also alleged that it has been paying the City's defense costs in the underlying Philpott litigation since July 6, 2005.  Selective sought an order from this court declaring that: (1) Selective does not owe a duty to defend the City in the underlying Philpott lawsuit; (2) Selective does not owe a duty to indemnify the City for its liability, if any, to Philpott in the underlying litigation; (3) ICRMT owes a duty to defend and indemnify the City for its liability in the underlying Philpott lawsuit; and (4) ICRMT must indemnify Selective for all defense fees paid by Selective for the City's defense in the underlying Philpott litigation to date.

On February 12, 2007, ICRMT filed a Motion to Dismiss (#13).  ICRMT argued that the case should be dismissed or, alternatively, stayed until the pending state court case was resolved.  On March 20, 2007, Magistrate Judge David G. Bernthal filed a Report and Recommendation (#24).  Judge Bernthal recommended denying the Motion.  Judge Bernthal reasoned that, because the court can determine whether Selective or ICRMT owes a duty to defend the City by simply comparing the allegations within the underlying complaint to the insurance policies at issue, the resolution of this question does not depend on the underlying state court suit.  On March 30, 2007, ICRMT filed its Objections to Magistrate Judge's Report and Recommendation (#26).  ICRMT stated that it was not contesting Judge Bernthal's determination that this court can decide the "duty to defend" issue by simply comparing the allegations within the underlying complaint with the insurance policies of Selective and ICRMT.  However, ICRMT argued Judge Bernthal should have recommended granting its Motion to Stay as to the duty to indemnify, which is not yet ripe for adjudication.

On April 13, 2007, this court entered an Order (#28).  This court concluded that an order

6

staying a portion of this litigation was not appropriate.  This court stated that, after it ruled on the issue of the duty to defend in this case, this court could address the issue of whether a determination on the issue of duty to indemnify would be premature.  This court stated that, at that time, this court could dismiss without prejudice or stay the proceedings until the underlying action in the Illinois state court had become final and any liability was determined.

On April 26, 2007, ICRMT filed its Answer, Counterclaim and Crossclaim to Selective's Complaint (#31).  In its Counterclaim and Crossclaim for Declaratory Judgment (Counterclaim), ICRMT stated that its Workers' Compensation Policy did not contain a duty to defend provision or otherwise obligate ICRMT to defend the City for any claim or suit.  ICRMT sought a declaration that it has no duty to defend the City in the underlying litigation and a declaration that it has no duty to indemnify the City for its liability in the underlying litigation.

On July 27, 2007, Selective filed a Motion for Partial Summary Judgment (#36) and attached exhibits.  Selective argued that the undisputed facts show that ICRMT has the sole duty to defend the City in the underlying litigation and that Selective does not have a duty to defend.  Selective therefore asked this court to enter summary judgment in its favor and declare that ICRMT owes a duty to defend the City in the underlying litigation, declare that Selective does not owe a duty to defend the City and declare that ICRMT must reimburse Selective for all expenses paid by Selective for the City's defense in the underlying litigation.  In support of its arguments, Selective attached copies of the insurance policies issued to the City by Selective and ICRMT.  The City also attached additional exhibits, including an excerpt from Philpott's deposition taken on October 11, 2005.

The ICRMT policy attached to Selective's Motion stated that the only coverage provided to the City was Part V, Workers' Compensation and Employers Liability Insurance.  Part V of the

7

policy stated, in pertinent part:

### SECTION I – INSURING AGREEMENT

**A.      Workers' Compensation Insurance**

We will pay those sums for which you are legally obligated for compensation and other benefits imposed upon you under the workers' compensation laws of any state listed in the Declarations.

**B.      Employers' Liability Insurance**

We will pay for those sums which you are legally obligated to pay as "ultimate net loss" because of "bodily injury" by "accident" or "bodily injury" by disease to an "employee" arising out of and in the course and scope of employment by you.

The policy also provided the following definition:

"Employee," as used in Coverage Parts I, II, III, IV and V, means any person employed by you or <u>volunteering services to you</u>, a "leased worker," or an elected or appointed official.  (Emphasis added.)

Under "Workers Compensation Proposal" on the Schedule of Coverage Declarations, the policy specifically stated "Extensions of Coverage: Volunteers."

As noted previously, Philpott testified at his deposition that, at the time he was injured, he was "doing work at that construction facility."  He also testified that he "was not working on duty in uniform" and was "do[ing] some volunteer work at the training facility."

On August 27, 2007, the City filed its Response to Selective's Motion for Partial Summary Judgment (#37), with attached exhibits.  ICRMT also filed a Response to the Motion (#39) as well

8

as its own Motion for Partial Summary Judgment (#38) with attached exhibits.  ICRMT argued that

this court should enter an order granting summary judgment in its favor and declare that ICRMT has

no duty to defend the underlying action and that Selective has a duty to defend.  On September 10,

2007, Selective filed its Response to ICRMT's Motion for Partial Summary Judgment (#40), a Reply

to ICRMT's Response to its Motion for Partial Summary Judgment (#41) and a Reply to the City's

Response (#42).  On September 24, 2007, ICRMT filed a Reply in support of its Motion for Partial

Summary Judgment (#43).  The motions for partial summary judgment are fully briefed and ready

for ruling.

ANALYSIS

I.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In

ruling on a motion for summary judgment, a district court has one task and one task only: to decide,

based upon the evidence of record, whether there is any material dispute of fact that requires a trial.

Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Summary judgment is not

warranted when there are genuine issues of material fact with respect to the interpretation of a

contract.  Cherry v. Auburn Gear, Inc., 441 F.3d 476, 481 (7th Cir. 2006).   However, "the

interpretation of an unambiguous contract is a question of law, and therefore a dispute over the terms

of an unambiguous contract is suited to disposition on summary judgment."  Utility Audit, Inc. v.

Horace Mann Serv. Corp., 383 F.3d 683, 687 (7th Cir. 2004).  Under Illinois law, the construction

9

of an insurance policy and a determination of the rights and obligations under the policy are questions of law which are appropriate for resolution by summary judgment.[4]  Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1077 (Ill. 1993); Hartford Fire Ins. Co. v. Everest Indem. Ins. Co., 861 N.E.2d 306, 310 (Ill. App. Ct. 2006); see also Essex Ins. Co. v. Soy City Sock Co., 503 F. Supp. 2d 1068, 1072 (C.D. Ill. 2007).

## II.  SELECTIVE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  ICRMT POLICY

In its Motion for Partial Summary Judgment, Selective stated that its position is that ICRMT, as the City's workers' compensation and employer's liability carrier, has the sole duty to defend the City in the underlying action.  Selective argues that, because ICRMT's policy covers injuries to "employees" and defines employees to include "volunteers," ICRMT's policy provides coverage for the underlying complaint whether Philpott was acting within the scope of his employment as a firefighter for the City or was acting as a volunteer while working on the construction of the fire training facility.  Selective also argues that, as the general liability and commercial umbrella carrier for the City, it has no duty to defend in the underlying action.

Under Illinois law, it is well settled that an "insurer's duty to defend its insured is much broader than its duty to indemnify its insured."  Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 828 N.E.2d 1092, 1098 (Ill. 2005), citing Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1220 (Ill. 1992); see also Hartford Fire Ins. Co., 861 N.E.2d at 310. To "determine whether an insurer has a duty to defend its insured, 'the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage

---

[4]  The parties do not dispute that Illinois law applies in this diversity action.

provisions of the insurance policy.'" <u>Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.</u>, 435 F.3d 729,

732 (7th Cir. 2006), <u>quoting</u> <u>Crum & Forster</u>, 620 N.E.2d at 1079.   If the facts alleged in the

underlying complaint fall within, or even potentially within, the coverage provisions of the policy,

the insurer must defend the insured.  <u>Valley Forge Ins. Co. v. Swiderski Elecs., Inc.</u>, 860 N.E.2d

307, 314-15 (Ill. 2006).  In assessing whether this duty exists, a court must construe the allegations

in the underlying complaint liberally and any doubt in coverage must be resolved in favor of the

insured.  <u>Native Am. Arts, Inc.</u>, 435 F.3d at 732.  "Nonetheless, deference only goes so far; if the

policy terms are unambiguous, the court must apply their plain and ordinary meaning."  <u>Native Am.</u>

<u>Arts, Inc.</u>, 435 F.3d at 732, <u>citing</u> <u>Crum & Forster</u>, 620 N.E.2d at 1078.  Therefore, an "insurer has

no duty to defend where it is 'clear from the face of the underlying complaints that the allegations

fail to state facts which bring the case within, or potentially within, the policy's coverage.'"  <u>Native</u>

<u>Am. Arts, Inc.</u>, 435 F.3d at 734, <u>quoting</u> <u>U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.</u>, 578 N.E.2d

926, 930 (Ill. 1991).

   "In construing an insurance policy, the primary function of the court is to ascertain and

enforce the intentions of the parties as expressed in the agreement."  <u>Crum & Forster</u>, 620 N.E.2d

at 1078.  "To ascertain the intent of the parties and the meaning of the words used in the insurance

policy, the court must construe the policy as a whole, taking into account the type of insurance for

which the parties have contracted, the risks undertaken and purchased, the subject matter that is

insured and the purposes of the entire contract."  <u>Crum & Forster</u>, 620 N.E.2d at 1078; <u>see also</u>

<u>Liberty Mut. Ins. Co. v. Am. Home Assurance Co.</u>, 858 N.E.2d 530, 536-37 (Ill. App. Ct. 2006).

If the words used in the policy are plain and unambiguous, the court will afford them their plain and

ordinary meaning and will apply them as written.  <u>Crum & Forster</u>, 620 N.E.2d at 1078; <u>see also</u>

11

Sokol & Co. v. Atl. Mut. Ins. Co., 430 F.3d 417, 420 (7th Cir. 2005).

In this case, this court first concludes that the allegations of the underlying Philpott lawsuit are "potentially within" the coverage provided by ICRMT's policy.  The allegations of the Amended Complaint show that Philpott was employed as a firefighter by the City prior to the date of the incident, April 6, 2004.  The allegations also show that he was working at a construction site where the City was building a fire training facility and the City "maintained control of the construction project ."  Philpott did specifically allege in his Amended Complaint that he was "off duty and was not within the scope or course of his employment."  ICRMT contends that its policy provides no coverage under its Employers' Liability Insurance because this insurance expressly applies to "'bodily injury' . . . to an 'employee' arising out of and in the course and scope of employment by [the City.]"  However, ICRMT's policy specifically provides coverage for "[v]olunteers" and defines "employee" to include any person "volunteering services to you."[5]  This court must "ascertain and enforce the intentions of the parties as expressed in the agreement."  See Crum & Forster, 620 N.E.2d at 1078.  Therefore, this court agrees with Selective that the only way these provisions can sensibly be read together without making coverage for volunteers completely illusory is to read them to mean that the insurance applies to "bodily injury" to a "[volunteer] arising out of and in the course and scope of [volunteering for the City]."  Accordingly, this court cannot agree with ICRMT that the allegations of the Philpott Amended Complaint do not trigger coverage under the ICRMT policy.  Instead, this court has no trouble concluding that the facts alleged potentially

---

[5]  This court notes that ICRMT's arguments have conveniently, and unhelpfully, ignored these provisions of the ICRMT policy.

fall within the coverage provided by the ICRMT policy.[6]

ICRMT argues, however, that regardless of whether the ICRMT policy provides coverage for the underlying litigation, it has no obligation to defend the City because its policy does not include a duty to defend.  ICRMT points out that its policy specifically states that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages" in Parts II, III, and IV of the policy.  No such language is included in Part V, which is the coverage provided to the City under the ICRMT policy.

ICRMT is correct that "the parties to an insurance agreement, as the parties to any other contract, have the power to contractually define the limits of the defense and indemnity protection afforded to the insured party."  Vill. of Lombard v. Intergovernmental Risk Mgmt. Agency, 681 N.E.2d 88, 92 (Ill. App. Ct. 1997).  Therefore, the "insurer's duty to defend its insured arises from, and is limited by, the expressed undertaking to defend as stated in the contract of insurance."  Vill. of Lombard, 681 N.E.2d at 92, citing Zurich Ins. Co. v. Raymark Indus., Inc., 514 N.E.2d 150, 161 (Ill. 1987); see also Centennial Ins. Co. v. Transitall Servs. Inc., 2001 WL 289879, at *2 (N.D. Ill. 2001).  In this case, the coverage provided to the City in Part V of the ICRMT policy does not include a duty to defend.

Selective has argued that a duty to defend can be implied in this case.  Selective relies on the

---

[6] This court notes that ICRMT has pointed out that, if it is determined that Philpott's injuries did in fact arise out of and in the course and scope of his employment with the City, he will not be able to recover in the underlying action because of the exclusive remedy provision of the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305/5(a) (West 2004).  ICRMT has also pointed out that, based upon Illinois case law, Philpott's cause of action will also be barred by this provision of the Workers' Compensation Act if it is established that his injury arose out of his employment status, even if he was acting as a volunteer.  See Flores v. Palmer Mktg., Inc., 836 N.E.2d 792, 797 (Ill. App. Ct. 2005); Anderson v. Poray, Inc., 191 N.E.2d 417, 424 (Ill. App. Ct. 1963).  ICRMT argues that the City cannot be found to have liability in the underlying litigation which would be covered by the ICRMT policy.  However, the issue of indemnification is not before this court at this point in the litigation.  Regardless of whether the factual findings in the state court will ultimately result in coverage under the ICRMT policy, the allegations of the Amended Complaint potentially fall within the coverage provided by the ICRMT policy.

policy provision which states under the heading "Employers' Liability Insurance" that ICRMT "will pay for those sums which you are legally obligated to pay as 'ultimate net loss' because of 'bodily injury' by 'accident' or 'bodily injury' by disease to an 'employee' arising out of and in the course and scope of employment by you."  Selective notes that the policy does not define "ultimate net loss" as to Part V of the policy.  Selective contends that this term is therefore ambiguous and must be construed to include a duty to defend.  Selective argues that, based upon the definition of "ultimate net loss" included in the policy for other types of insurance, it should be read to include legal expenses and defense costs, as provided for in the definitions for the other coverage parts. Selective also points out that the general provisions portion of the policy states that "[a]mounts we pay, or authorize you to pay, to investigate, settle or defend any 'claim' or 'suit' are considered part of . . . [c]ompensation and other benefits imposed upon you for Worker's Compensation or 'ultimate net loss' under Coverage Part V."  In support of its argument that ambiguities in a policy can create a duty to defend, Selective has cited Lifschultz Fast Freight, Inc. v Transcontinental Freight Sys., Inc., 1993 WL 787511 (N.D. Ill 1993); Ins. Corp. of Ireland, Ltd. v. Bd. of Trs. of S. Ill. Univ., 937 F.2d 331 (7th Cir. 1991), and Solo Cup Co. v. Federal Ins. Co., 619 F.2d 1178 (7th Cir. 1980).

This court agrees with ICRMT, however, that the cases cited do not support Selective's contention that a duty to defend can be implied in these circumstances.  In fact, the court in Lifschultz Fast Freight specifically found no duty to defend, noting that the policy at issue did not include an explicit "duty to defend" provision and that "a duty to defend cannot be implied by the provisions of the policy cited by [the plaintiff]."  Lifschultz Fast Freight, 1993 WL 787511, at *4. In Ins. Corp. of Ireland, the court affirmed the district court's finding that the insurance company was required to provide coverage for the costs of defending a lawsuit; however, the policy at issue

14

specifically provided for the payment of defense costs.  See Ins. Co. of Ireland, 937 F.2d at 333, 336-

38.  In Solo Cup, the court found that the insurance company had a duty to defend.  Solo Cup, 619

F.2d at 1188.  The court did discuss the definition of "ultimate net losses" in the policy; however,

the policy at issue specifically provided that "the company shall . . . [d]efend any suit against the

insured alleging such injury . . . and seeking damages on account thereof . . . ."  Solo Cup, 619 F.2d

at 1182.

     This court recognizes that, where a policy is ambiguous regarding whether it provides a duty

to defend, the ambiguity must be resolved in favor of the insured.  See Bedoya v. Ill. Founders Ins.

Co., 688 N.E.2d 757, 762 (Ill. App. Ct. 1997).  However, where the plain language of a policy does

not include a duty to defend, a court cannot read such a duty into the policy.  See Centennial Ins.

Co., 2001 WL 289879, at *3 (where the policy stated that the insurance company had the right to

provide a defense, court found no duty to defend).  This court concludes that there is no ambiguity

in ICRMT's policy regarding a duty to defend and it would "strain[] the polic[y] beyond the

breaking point" to read the policy the way Selective urges.  See Prisco Serena Sturm Architects, Ltd.

v. Liberty Mut. Ins. Co., 126 F.3d 886, 893 (7th Cir. 1997).

     This court therefore concludes that Selective is not entitled to a declaration that ICRMT has

a duty to defend against the underlying Philpott lawsuit.  Selective has also argued that it is entitled

to a declaration that ICRMT must reimburse Selective for its costs incurred thus far in defending the

City.  ICRMT has stated that it agrees with Selective's premise that it does have a duty to indemnify

the City for all legal expenses and defense costs which the City is ultimately found to be legally

obligated to pay for covered claims.  However, Selective has argued only that it should be awarded

its expenses in defending against the Philpott lawsuit because "ICRMT has the sole duty to defend."

15

This court has concluded that ICRMT does not have a duty to defend, so this court cannot rule in Selective's favor on this basis.   This court concludes that the issue whether, based upon the provisions of the ICRMT policy, ICRMT must reimburse Selective for all or a part of the defense costs Selective has incurred cannot be made until the conclusion of the state court proceedings.

## B.  SELECTIVE GENERAL LIABILITY POLICY

Selective also argues that it is entitled to a declaration that it has no duty to defend the City in the underlying matter under either its general liability policy or its commercial umbrella policy. Selective first contends that there is no coverage for the underlying Philpott lawsuit under the general liability policy issued to the City.   As noted previously, this policy included the following exclusion:

> [This insurance does not apply to] "Bodily injury" to: (1) An "employee" of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . .

The policy also provided:

> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to pay damages with or repay someone else who must pay damages because of the injury.

The policy specifically stated that there was no duty to defend any "suit" seeking damages "to which this insurance does not apply."

16

It is the burden of the insurer to show that a claim falls within a provision that limits or excludes coverage.  Pekin Ins. Co. v. L.J. Shaw & Co., 684 N.E.2d 853, 855 (Ill. App. Ct. 1997).

In addition, this court recognizes that when an insurer "seeks to avoid coverage based on an exclusionary provision in the policy, the applicability of the exclusionary clause must be clear and free from doubt." Bituminous Cas. Corp. v. Fulkerson, 571 N.E.2d 256, 262 (Ill. App. Ct. 1991). Moreover, "[p]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 796 N.E.2d 1133, 1142 (Ill. App. Ct. 2003), citing Am. States Ins. Co. v. Koloms, 687 N.E.2d 72, 75 (Ill. 1997).  However, when a clear and unambiguous exclusion places a valid limitation on policy coverage, the plain language of the exclusion must be enforced by the courts. See Native Am. Arts, Inc., 435 F.3d at 733; Pekin Ins. Co., 684 N.E.2d at 859; see also State Farm Fire & Cas. Co. v. Hatherley, 621 N.E.2d 39, 42 (Ill. App. Ct. 1993).  In addition, "[i]t is the specific provisions of the policy that must control, not the availability of other coverage." Lenny Szarek, Inc. v. Maryland Cas. Co., 829 N.E.2d 871, 878 (Ill. App. Ct. 2005).  In this case, this court concludes that the exclusion clearly applies.

Selective argues that Philpott alleged in both his original and Amended Complaint that he was performing construction work at the fire training facility, which was owned by the City. Selective further contends that construction of the training facility was within the purview of the City's business to provide adequate training for its firemen.  Selective therefore argues that, because Philpott was an employee of the City and his injuries arose out of "[p]erforming duties related to the conduct of the [City's] business," the Employer's Liability exclusion in the policy applies.  Selective

17

points out that this exclusion does not require that Philpott's injuries arose out of the course and scope of his employment. It contends that, if Philpott was acting within the scope of his employment, the exclusion in subpart(a) applies. If he was volunteering his services to the City, the cited part of the exclusion in subpart (b) applies. Selective further points out that the policy language which states that the exclusion is applicable "[w]hether the insured may be liable as an employer or in any other capacity" clearly demonstrates that the parties intended that this exclusion applies above and beyond situations involving the employer-employee relationship.

In Response to this argument, ICRMT argues that Count III of Philpott's Amended Complaint alleges only that Philpott was an invitee on the property and "is devoid of any allegation that Philpott was performing construction activities or any duties owed to the City at the time of his accident." ICRMT argues that Count III makes it absolutely clear that Philpott is alleging a cause of action arising out of the City's duties as an "owner of land" to persons invited on the premises. ICRMT argues that there can be no question but that the allegations of Count III of Philpott's Amended Complaint "potentially fall within the Selective policy's coverage."[7] ICRMT points out that the "general rule in Illinois requires an insurer to defend a claim against an insured when any theory of the complaint gives rise to the possibility that the insurer would be liable for its costs." Vill. of Lombard, 681 N.E.2d at 1008, citing Maryland Cas. Co. v. Peppers, 355 N.E.2d 24, 28 (Ill. 1976). The duty to defend therefore "extends to cases where the complaint alleges several causes of action, one of which is within the coverage of a policy while the others may not be." Vill. of

_____

[7] ICRMT also briefly argues that the allegations of Count II potentially fall within the coverage of the general liability policy issued by Selective. This court concludes that this argument is completely without merit. In Count II of the Amended Complaint, Philpott alleged that he "was engaged in the construction" at the site where the City "undertook construction for the purpose of building a fire training facility." Count II also alleged that the City "maintained control of the construction project including the right to direct the operational details of the persons who were upon the scene and performing construction." Based upon these allegations in Count II, it is clear that the exclusion for "bodily injury" arising out of and in the course of "[p]erforming duties related to the conduct of the insured's business" applies.

18

Lombard, 681 N.E.2d at 1009, citing Peppers, 355 N.E.2d at 28.

      ICRMT has argued that Count III was pleaded in the alternative and that this court should not consider the allegations in Count II that Philpott was engaged in construction activities at the City's fire training facility.  ICRMT has cited Ill. Cas. Co. v. Turpen, 405 N.E.2d 4 (Ill. App. Ct. 1980) in support of this argument.  This court concludes that the case cited does not support ICRMT's argument.

      In Turpen, the court stated:

> Where a party has plead separate counts against various defendants but has not plead in the alternative, there is no rule which requires the court to consider each count in isolation and ignore facts plead in other counts.

Turpen, 405 N.E.2d at 7; see also SCR Med. Transp. Servs., Inc. v. Browne, 781 N.E.2d 564, 569 (Ill. App. Ct. 2002).  In this case, Count III was not specifically pled in the alternative.  Therefore, this court is not required to ignore the facts pled in Count II.  See Browne, 781 N.E.2d at 569-70.

      ICRMT relies on language in Turpen which states that "alternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader."  Turpen, 405 N.E.2d at 7.  ICRMT therefore contends that this court should read Count III to allege that Philpott was simply an "invitee" on the City's property who was injured by the City's negligence, a claim potentially within the coverage provided by Selective's general liability policy.  The problem with this argument is that Philpott testified at his deposition that, at the time he was injured, he was "doing work at that construction facility" and that he was "do[ing] some volunteer work at the training facility."

19

ICRMT contends that this deposition testimony should be "disregarded." ICRMT is, of course, correct that this court must consider only the allegations of the underlying complaint in determining whether there is a duty to defend under the terms of the insurance policy. See Bituminous Cas. Corp., 571 N.E.2d at 260. However, Illinois courts "do not elevate form over substance." See Aetna Cas. & Surety Co. v. Beautiful Signs, Inc., 496 N.E.2d 1229, 1230 (Ill. App. Ct. 1986). Philpott's testimony is the admission of a party and establishes, without question, that, at the time he was injured, he was engaged in construction activities at the site where the City was building a fire training facility. Therefore, there can be no "genuine doubt" as to Philpott's activities at the time he was injured. Because there is no genuine doubt, Philpott's allegation in Count III that he was an "invitee" cannot be considered an alternative fact allegation and be read to mean that Philpott was not engaged in construction at the site. Cf. Turpen, 405 N.E.2d at 7.[8] Moreover, the fact that Philpott was engaged in construction at the time of his injuries is actually perfectly consistent with the allegations of Count III of the Amended Complaint. Count III alleged that the City "negligently and carelessly performed construction activities" in various ways, including "fail[ing] to require the spotters to keep their attention trained on the people working in the vicinity of the backhoe" and "caused the backhoe to come down on the plaintiff (emphasis added)." Count III also alleged that the City was negligent in "conducting the activities of constructing a fire training facility within the premises."

This court agrees with Selective that the allegations of the underlying Philpott Amended Complaint show that Philpott was an employee of the City and, whether or not he was acting within the course and scope of his employment (a fact yet to be determined in the state court), he was

---

[8] This court further notes that, based on Philpott's deposition testimony, such an alternative fact allegation could not be "made in good faith."

"[p]erforming duties related to the conduct of the insured's business" when he was engaged in the construction of the fire training facility on the City's premises and was injured.  The language of the exclusion is clear and unambiguous and applies to the facts alleged in the underlying complaint.  Accordingly, this court concludes that it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the coverage provided by Selective's general liability policy.[9]

This court notes that the City has argued that the policy issued by Selective to the City was the result of a solicitation for insurance bids solicited on behalf of the City by a professional risk management advisor.  The City argued that it solicited the broadest general liability coverage and specified that the coverage should include liability arising from conduct of employees of the City and liability arising from injuries to volunteers.  The City therefore argued that Selective was required to provide this coverage to the City.  In support of this argument the City attached a 116-page document entitled "Specifications for Proposals for Property and Casualty Insurance Coverage" for the City.  The City also attached the affidavit of Deborah Muller, the City Clerk.  Muller stated that the attached "Specifications" was an exact true and accurate copy of the specifications for proposals provided to insurance carriers, including Selective.   This court does not find the City's argument persuasive.[10]

This court has concluded that the general liability insurance policy issued by Selective is

---

[9]  Because this court has concluded that the allegations of the underlying complaint potentially fall within the coverage of the ICRMT policy, but do not potentially fall within the coverage of the Selective general liability policy, this court does not need to address ICRMT's lengthy arguments regarding which of these two policies is primary and which is excess.

[10]  This court notes that it agrees with Selective that the evidence provided by the City does not show that the policy Selective issued to the City was a result of this solicitation or that this was the final solicitation.

clear and unambiguous and does not provide coverage based upon the allegations of the underlying complaint.  The City is seeking to use parol evidence to demonstrate the intent of the parties.  However, the "scope of the relationship between an insurer and an insured is defined and controlled by the insurance policy."  Sharp v. Trans Union L.L.C., 845 N.E.2d 719, 726 (Ill. App. Ct. 2006).  Parol evidence cannot be considered to interpret policy language that is facially unambiguous.  Lee v. Allstate Life Ins. Co., 838 N.E.2d 15, 23-24 (Ill. App. Ct. 2005).  Therefore, if the policy language is unambiguous, as this court has concluded here, the policy must be applied as written.  See Sharp, 845 N.E.2d at 727.  Under these circumstances, the City's attempt to use parol or extrinsic evidence to "stave off summary judgment" must fail.  See Cherry, 441 F.3d at 481.

## C.  SELECTIVE COMMERCIAL UMBRELLA POLICY

As far as the commercial umbrella policy issued to the City, the pertinent exclusion provides that the insurance did not apply to "Bodily injury" to an "Employee" of the insured "arising out of and in the course of employment by the insured."  Because Philpott alleged in his Amended Complaint that he "was off duty and was not within the scope or course of his employment," Selective has stated that it makes no argument at this time that this exclusion applies to preclude coverage.  Selective argues that it has no duty to defend because the policy provides, "[w]e will have no duty to defend any claim or 'Suit' that any other insurer has a duty to defend."  Selective contends that, because ICRMT has a duty to defend the City in the underlying litigation, there is no duty imposed upon Selective under its commercial umbrella policy.  However, this court has already concluded that, because the ICRMT policy does not include a duty to defend, ICRMT does not have a duty to defend the City against the Philpott lawsuit.  Therefore, this court must conclude that Selective has a duty to defend under the commercial umbrella policy issued to the City.

22

## D.  CONCLUSION

For all the reasons stated, Selective's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  This court concludes that Selective has no duty to defend under the provisions of the general liability policy Selective issued to the City.  Summary judgment is entered in favor of Selective on that issue.  However, this court concludes that ICRMT does not have a duty to defend and that Selective has a duty to defend under the provisions of the commercial umbrella policy issued to the City.  Therefore, this court declines to enter summary judgment declaring that ICRMT owes a duty to defend the City or declaring that Selective does not have a duty to defend under its commercial umbrella policy.  This court further concludes that, at this point in the proceedings, it cannot enter summary judgment declaring that ICRMT must reimburse Selective for all expenses paid by Selective for the City's defense.

## III.  ICRMT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ICRMT argues that it is entitled to summary judgment on its Counterclaim seeking a declaration that it has no duty to defend the City in the underlying action and that Selective has a duty to defend.  This court has already concluded that ICRMT does not have a duty to defend because its policy does not contain a duty to defend provision.  This court has also concluded that Selective has a duty to defend under the commercial umbrella policy issued to the City.  Accordingly, ICRMT's Motion for Partial Summary Judgment (#38) is GRANTED.

23

IT IS THEREFORE ORDERED THAT:

(1) Selective's Motion for Partial Summary Judgment [36] is GRANTED in part and DENIED in part. Judgment is entered in favor of Selective on Selective's Complaint for Declaratory Judgment [1] solely on the issue of Selective's duty to defend under the general liability policy. This court hereby declares that Selective does not have a duty to defend the City under the general liability policy it issued to the City. This court denies Selective's Motion for Partial Summary Judgment to the extent that Selective sought a declaration that it does not have a duty to defend under the commercial umbrella policy it issued to the City and to the extent it sought a declaration that ICRMT has a duty to defend and must reimburse Selective for all expenses paid by Selective for the City's defense in the underlying Philpott litigation.

(2) ICRMT's Motion for Partial Summary Judgment [38] is GRANTED. Judgment is entered in favor of ICRMT on ICRMT's Counterclaim [31] as to the issue of the duty to defend. This court hereby declares that ICRMT does not have a duty to defend the City.

(3)  This court has made its determination as to the duty to defend in this case.  The issues of indemnification raised in Selective's Complaint for Declaratory Judgment [1] and ICRMT's Counterclaim [31] cannot be determined until after the underlying action in the Illinois state court has become final and any liability is determined.  The issue of any reimbursement by ICRMT of the expenses paid by Selective in defense of the underlying action can also be determined at that time.  This court therefore dismisses this action, without prejudice, with leave to reinstate after the state court proceedings have become final and any liability has been determined.

(4) This case is terminated.

ENTERED this 24th day of October, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE